IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

| | |
|---|---|
| KATHY L. SAFRANSKI, on behalf of herself and all others similarly situated,<br><br>                    Plaintiff,<br><br>    *vs.*<br><br>PROFESSIONAL PLACEMENT SERVICES, LLC; a Wisconsin Limited Liability Company; and, JOHN AND JANE DOES NUMBERS 1 THROUGH 25,<br><br>                    Defendants. | Case No.: 1:17-cv-00129-WCG |

## UNOPPOSED MOTION FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS SETTLEMENT AGREEMENT AND RELEASE

Plaintiff, Kathy L. Safranski, individually, and as representative of the class of persons defined below in Section II ("Settlement Class"), by and through her undersigned counsel, and on consent of Defendant, Professional Placement Services, LLC ("PPS"), submits this Motion for Final Approval of the Class Action Settlement Agreement ("Agreement" or ("Settlement")), which Plaintiff and PPS entered into on October 20, 2017. [Doc. 22-1].

In support of her motion, Plaintiff respectfully shows the following:

### I. INTRODUCTION

Plaintiff achieved a valuable settlement for Class Members which provides significant protections including direct payments to individual Class Members. In short, the Settlement represents a victory for Wisconsin consumers in the sphere of FDCPA enforcement.

On November 14, 2017, the Court preliminarily approved the Settlement and conditionally certified the settlement class under Federal Rule of Civil Procedure 23(b)(3). [Doc. 24]. The Court should now grant final approval to the Settlement because it is a fair, reasonable, and adequate result for Class Members.

## II. CLASS DEFINITION

The Court defined the class as follows:

> All persons with addresses in the State of Wisconsin to whom Professional Placement Services, LLC mailed an initial written communication to collect a debt, between January 27, 2016 and February 17, 2017, which states "Re: Partnership Community Health Center."

## III. OVERVIEW OF THE CASE

### A. *Factual and Procedural History*

Plaintiff's Complaint alleges PPS violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq*. by mailing consumers initial collection letters which failed to identify the current creditor in a clear and unambiguous fashion as required by the FDCPA. *Id.* Plaintiff alleges PPS's foregoing collection letters violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692g(a)(2). *Id.*

On April 7, 2017, PPS filed an Answer with Affirmative Defenses to the Complaint denying it violated the FDCPA, as well as denying all liability to Plaintiff and the Settlement Class. [Doc. 11].

The Parties each served their Fed. R. Cv. P. 26(a) Initial Disclosures and, on May 8, 2017, Plaintiff served PPS with her initial sets of Interrogatories, Requests for Production, and Requests for Admissions. On May 10, 2017, the Court conducted an Initial Conference at which time it entered its Scheduling Order governing deadlines in the Litigation [Doc. 16].

Thereafter, PPS responded to Plaintiff's written discovery and Plaintiff took PPS's deposition. During discovery, PPS also produced confidential information concerning class size and damages for the class period alleged in the litigation.

Since the commencement of discovery, the Parties also engaged in extensive arms-length discussions to resolve the litigation, which ultimately culminated with an agreement to settle the claims of Plaintiff and Class Members on the terms set forth in the Settlement [Doc. 22-1].

Counsel for the Parties investigated and analyzed the legal and factual issues presented in this action, the risks and expense involved in pursuing the litigation to conclusion, the likelihood of recovering damages more than those obtained through this Settlement, the protracted nature of the litigation and the likelihood, costs and possible outcomes of one or more procedural and substantive appeals.

On November 10, 2017, Plaintiff filed her Motion for Preliminary Approval of the Parties' Class Settlement Agreement [Doc. 22], which the Court granted on November 14, 2017 [Doc. 24] ("Order"). The Court's Order found the Parties' proposed Settlement satisfied all the elements of Federal Rules of Civil Procedure 23(a) and 23(b)(3), and preliminarily certified the class as follows:

> All persons with addresses in the State of Wisconsin to whom Professional Placement Services, LLC mailed an initial written communication to collect a debt, between January 27, 2016 and February 17, 2017, which states "Re: Partnership Community Health Center."

**B.** *Summary of the Terms of the Settlement*

The Court previously considered Settlement's terms when granting preliminary approval, which terms provide the following relief to Plaintiff and the Class:

(1) **Class Recovery**. PPS will create a class settlement fund of $9,000.00 ("Class Recovery"), which a Third-Party Settlement Administrator ("Settlement Administrator") will distribute *pro rata*, not to exceed $50.00, among those Class Members who does not exclude him/herself and who timely returns a claim form ("Claimants"). [Doc. 22-1, ¶¶ 10 and 11(a)]. Claimants will receive a *pro rata* share of the Class Recovery by check. *Id.* Checks issued to Claimants will be void sixty (60) days from the date of issuance. *Id.*

- *Residual Class Recovery*. Any Class Recovery checks not cashed by the void date, along with any unclaimed funds remaining in the Class Recovery,

> will be disbursed in the following order: (i) to pay the costs associated with providing notice to Class Members and administering the Class Recovery; and (ii) any remainder donated as a *cy pres* award to one or more charitable organizations without any religious or political affiliations as directed by the Court. *Id.* at ¶11(d). Plaintiff proposes any *cy pres* award be designated to Legal Action of Wisconsin, who provides *pro bono* legal services provides free legal services to low-income people throughout the State of Wisconsin who would otherwise be denied justice without its help. *Id*

(2) **Plaintiff's Recovery**. Subject to Court approval, PPS shall pay $2,000.00 to Plaintiff for her statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(B), which also takes into account her services to the Settlement Class. *Id.* at ¶11(b).

(3) **Attorneys' Fees and Costs**. In connection with Plaintiff's Counsel's application for approval of attorney's fees and costs, the Parties stipulate that, if the Court grants the Final Order, then the Litigation is a "successful action" within the meaning of 15 U.S.C. § 1692k(a)(3) notwithstanding that PPS does not admit to liability. *Id.* at ¶12. As such, PPS agrees Class Counsel shall be entitled to receive $48,000.00, which covers all fees and all expenses arising out of the Litigation including all costs associated with providing notice to the Settlement Class and administering the Class Recovery. *Id.* at ¶¶11(c), 12, and 19. The award of fees, costs, and expenses to Class Counsel shall be in addition to, and shall not in any way reduce, the settlement amounts provided to Class Members. *Id.* at ¶12.

## C. *Class Notice was Effected Just as the Court Instructed*

The Court appointed Plaintiff as representative of the Settlement Class and her attorneys, Stern• Thomasson LLP as Class Counsel. [Doc. 24, ¶1(c),(d)]. The Order also established a procedural framework for final approval of the Settlement, directed the Parties to implement the Court's Notice Plan for providing notice to Class Members, set deadlines and procedures for Class Members to return a claim form, seek exclusion, from or object to the Settlement, and set a date and time for the final fairness hearing to approve the Settlement. (*See id*. ¶¶ 2-8). As discussed *infra*, the Parties complied with the Court's Order.

On December 5, 2017, Heffler Claims Group, the court-appointed Settlement Administrator, caused actual notice to be sent by first class mail to each of the 1,319 Class Members identified in PPS's business records. [*Smitheman Decl*., ¶¶3-7]. As of February 15, 2018, a total of 209 notices were returned by the U.S. Postal Service as undeliverable and with

no forwarding information, while 75 Class Members expressed their approval of the Settlement by returning a claim form. [*Id.* at ¶¶8-10]. None of the Class Members objected to, or sought exclusion from, the Settlement. [*Id.* at ¶11; *Thomasson Decl.*, ¶7].

On November 15, 2017, PPS served the notice required by the Class Action Fairness Act of 2005, 28 U.S.C. §1715(b) ("CAFA") on the United Stated State Attorney General, Wisconsin Attorney General, and the Secretary of the Wisconsin Department of Financial Institutions. [Doc. 25]. To date, no government officials or entities have voiced any objection to the Settlement. [*Thomasson Decl.*, ¶8].

**IV.     THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT**

The Court should grant final approval to the Settlement. Final approval of a class action settlement involves two fundamental inquiries. First, the Court must determine whether a class can be certified under Rule 23(a) and at least one prong of Rule 23(b). *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Second, the Court must determine whether the proposed settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).

In determining whether to grant approval, the Seventh Circuit has long recognized that federal courts strongly favor resolution of litigation through settlement and there is an overriding public interest in settling class action litigation, and it should therefore be encouraged. *Armstrong v. Bd. of Sch. Dirs. of the City of Milwaukee*, 616 F.2d 305, 312-13 (7th Cir. 1980) (citations and quotation marks omitted), overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998); *see also Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation"). The traditional means for handling claims like those at issue here as individual litigations would unduly tax the court system, require a massive expenditure of public and private resources and, given the relatively small value of the claims for most of the individual Class Members, would be impracticable.

Thus, the proposed Settlement is the best vehicle for Class Members to receive relief to which they are entitled in a prompt and efficient manner.

The *Manual for Complex Litigation* (Fourth) (2004) § 21.63 describes a three-step procedure for approval of class action settlements:

> (1) Preliminary approval of the proposed settlement at an informal hearing;
>
> (2) Dissemination of mailed and/or published notice of the settlement to all affected class members; and
>
> (3) A "formal fairness hearing" or final settlement approval hearing, at which class members may be heard regarding the settlement, and at which evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

The first two steps in this process have already occurred. With this motion, Plaintiff respectfully requests the Court take the third and final step in the process by granting final approval of the Settlement.

## A. *The Class Meets All the Requirements of Fed. R. Civ. P. 23(a)*

### 1. Rule 23(a)(1) - The Class Is So Numerous That Joinder Of All Members Is Impracticable.

Fed. R. Civ. P. 23(a)(1) requires the class be "so numerous that joinder of all members is impracticable." Numerosity is satisfied and joinder is generally considered impracticable when the members of a class exceed forty. *Swanson v. American Consumer Industries*, 415 F.2d 1326, 1333 (7th Cir. 1969). Here, there were 1,210 individuals who met the Class definition each of whom were sent—and received—direct notice of the Settlement via U.S. Mail. [*Smitheman Decl.*, ¶¶7-9]. Accordingly, the number of Class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

### 2. Rule 23(a)(2) - The Claims Of The Class Arise From Common Questions Of Law And Fact.

Fed. R. Civ. P. 23(a)(2) requires that class members share a common question of law or fact. Commonality is satisfied when a common issue of law or fact is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Common questions often arise where defendants have engaged in standardized conduct towards members of the proposed class. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998); *Doster Lighting, Inc. v. E-Conolight, LLC*, No. 12-C-0023, 2015 WL 3776491, at *5 (E.D. Wis. June 17, 2015) (quoting *Suchanek v. Sturm Foods,* 764 F.3d 750, 756 (7th Cir. 2014) ("Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question.").

Here, Class Members' claims have common issues of fact based upon PPS having mailed identical collection letters to Plaintiff and each Class Member, which uniformly failed to identify the current creditor in a clear and unambiguous fashion. These claims all arise under a single statute—i.e., the FDCPA. These common issues of fact and law satisfy Rule 23(a)(2).

### 3. Rule 23(a)(3) – Plaintiff's Claims Are Typical of the Claims of the Class.

The "typicality" requirement of Rule 23(a)(3) is satisfied for the reasons the "commonality" requirement of Rule 23(a)(2) is met. The Seventh Circuit has held that "[a] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (Citation and internal quotation marks omitted.)
Here, typicality is inherent in the class definition. By definition, PPS mailed Plaintiff and each Class Member the same *standardized*, templated, letter which violated the FDCPA in the same

manner (*i.e.*, by failing to identify the current creditor of the debt), entitling each of them to damages. Thus, the typicality requirement of Rule 23(a)(3) is plainly satisfied.

### 4. Rule 23(a)(4) - Plaintiff and Class Counsel Have Fairly and Adequately Protected the Interests of Class Members.

Fed. R. Civ. P. 23(a)(4) requires a named plaintiff provide fair and adequate protection for the interests of the class. That protection involves two factors: (1) a plaintiff's attorney must be qualified, experienced, and generally able to conduct the proposed litigation; and (2) a plaintiff must not have interests antagonistic to the class. *Eubank v. Pella Corp.*, 753 F.3d 718, 722 (7th Cir. 2014); *Phillips v. Asset Acceptance, LLC*, 736 F.3d 1076, 1080-81 (7th Cir. 2013).

As for the first prong, no conflict exists between the Plaintiff and Class Members as evidenced by the fact that Plaintiff: (1) is a typical consumer who received the same violative collection letter as Class Members on whose behalf she seeks damages; (2) has seen this litigation through to its conclusion on behalf of the Settlement Class; and, most importantly, (3) negotiated a settlement that resulted in Class Members receiving direct payments from of the Class Recovery [Doc. 22-1, ¶11(a)]. As for the second prong, the Declaration of Andrew T. Thomasson, accompanies this brief and sets forth Class Counsels' experience in cases involving complex issues and class action litigation [Doc. 28].

Accordingly, Plaintiff submits that both prongs of the adequacy inquiry under Rule 23(a)(4) are satisfied.

### B. *The Class Meets All the Requirements of Fed. R. Civ. P. 23(b)(3)*

Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Amchem*, 521 U.S. at 615. Class actions are especially appropriate for resolving FDCPA claims. *See, e.g., Crawford v. Equifax Payment Servs., Inc.*, 201

F.3d 877, 880 (7th Cir. 2000) ("Because these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed."). For the reasons set forth *infra*, both requirements are satisfied in the present case.

### 1. Common Questions Predominate Over Individual Issues.

As the Supreme Court explained in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud." *Id*. at 625. These requirements are normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984). The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. Halverson, supra, 69 F.R.D. at 334-336.

Here, Plaintiff seeks certification of a settlement-only class in which questions of law and fact predominate over any questions affecting only individual Class Members—*i.e*., PPS mailed Plaintiff and each Class Member identical collection letters which allegedly violates the FDCPA in the same manner. Accordingly, the predominance factor is satisfied.

### 2. A Class Action is Superior to Other Methods of Resolving This Matter.

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is

-8-
Case 1:17-cv-00129-WCG    Filed 02/20/18    Page 9 of 16    Document 26

F.3d 877, 880 (7th Cir. 2000) ("Because these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed."). For the reasons set forth *infra*, both requirements are satisfied in the present case.

### 1. Common Questions Predominate Over Individual Issues.

As the Supreme Court explained in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud." *Id*. at 625. These requirements are normally satisfied when there is an essential common factual link between all class members and the defendant for which the law provides a remedy. *Halverson v. Convenient Food Mart, Inc.*, 69 F.R.D. 331, 334 (N.D. Ill. 1974). Where a question of law involves "standardized conduct of the defendants toward members of the proposed class, a common nucleus of operative facts is typically presented, and the commonality requirement . . . is usually met." *Franklin v. City of Chicago*, 102 F.R.D. 944, 949 (N.D. Ill. 1984). The authorities hold that cases dealing with the legality of standardized documents or conduct are generally appropriate for resolution by means of a class action because the document or conduct is the focal point of the analysis. Halverson, supra, 69 F.R.D. at 334-336.

Here, Plaintiff seeks certification of a settlement-only class in which questions of law and fact predominate over any questions affecting only individual Class Members—*i.e*., PPS mailed Plaintiff and each Class Member identical collection letters which allegedly violates the FDCPA in the same manner. Accordingly, the predominance factor is satisfied.

### 2. A Class Action is Superior to Other Methods of Resolving This Matter.

Rule 23(b)(3) also requires the Court to determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Efficiency is the primary focus in determining whether the class action is the superior method for resolving the controversy presented. *Eovaldi v. First Nat'l Bank*, 57 F.R.D. 545 (N.D. Ill. 1972). The Court is

required to determine the best available method for resolving the controversy in keeping with judicial integrity, convenience, and economy. *Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181, 189 (N.D. Ill. 1992). It is proper for a court, in deciding the "best" available method, to consider the ". . . inability of the poor or uninformed to enforce their rights, and the improbability that large numbers of class members would possess the initiative to litigate individually." *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974).

Here, there are 1,210 persons in the Settlement Class; however, they have little interest in controlling the prosecution of the action because each has a very small claim in relation to the cost of prosecuting a lawsuit. This is evidenced by the fact that **not a single class member objected to, or sought exclusion from, the settlement**.

In light of the foregoing, the superiority element of Rule 23(b)(3) is satisfied.

### C. *The Court Should Grant Final Approval to the Agreement Because It Is Fair, Reasonable, and Adequate*

Rule 23(e) requires a determination by the district court that the proposed settlement is "fair, reasonable and adequate." Fed. R. Civ. P. 23(e)(2). When determining whether a settlement is ultimately fair, adequate, and reasonable at the final approval stage, courts in this Circuit consider the following factors:

> (1) the strength of Plaintiff's case compared to the terms of the proposed settlement;
>
> (2) the likely complexity, length, and expense of continued litigation;
>
> (3) the amount of opposition to settlement among affected parties;
>
> (4) the opinion of competent counsel; and
>
> (5) the stage of the proceedings and the amount of discovery completed.

*Isby*, 75 F.3d at 1199. In reviewing these factors, courts view the facts "in a light most favorable

to the settlement." *Id.* (quoting *Armstrong,* 616 F.3d at 315). In addition, courts "should not substitute their own judgment as to the optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong*, 616 F.2d at 315.

Application of these factors here confirms the Settlement is fair, reasonable, and adequate, and should be finally approved.

### 1. The Strength of Plaintiff's Case Compared to the Terms of the Settlement Supports Final Approval.

"The most important factor relevant to the fairness of a class action settlement is the first one listed: the strength of the Plaintiffs' case on the merits balanced against the amount offered in the settlement." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 864 (7th Cir. 2014) (quotation marks omitted). Nevertheless, "[b]ecause the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to Plaintiffs." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (citations omitted).

Here, the maximum recovery for the class would be the lesser of $500,000 or 1% of PPS's net worth. 15 U.S.C. § 1692k(a)(2)(B). Here, Plaintiff recovered *substantially more* than the maximum available damages under the FDCPA even if she prevailed on the merits at trial and on appeal. [*See*, Doc. 22, ¶10].

### 2. Continued Litigation is Likely to be Complex, Lengthy, and Expensive, and Thus This Factor Favors Final Approval

Here, this lawsuit has been pending for over a year and the likelihood of success for class members if they proceeded to trial is uncertain. Although PPS had responded to written discovery and appeared for deposition, additional party and non-party discovery was being sought including depositions. As a putative class action, complex legal and factual issues would be the subject of hotly contested pretrial motions, including summary judgment and class

certification. The class certification decision (if granted) might also lead to the inevitable Rule 23(f) interlocutory appeal, potentially delaying prosecution of the Action should a stay pending appeal be granted. Given the prospect of protracted litigation, engendering enormous time and monetary expenditure, this factor weighs in favor of approval.

### 3. Class Member Response Has Been Overwhelmingly Positive to the Settlement, Supporting Final Approval.

Here, 1,210 Class Members received actual direct notice; yet, not a single Class Member objected to, or sought exclusion from, the Settlement. The lack of ***any*** negative responses strongly favors approval of the Settlement. *See, e.g., In re Southwest Airlines Voucher Litig.*, 2013 U.S. Dist. LEXIS 120735, at *21 (N.D. Ill. Dec. 6, 2013) (finding that the "low level of opposition" amounting to 0.01% of the class "supports the reasonableness of the settlement") *See also, Bell Atl. Corp. v. Bolger*, 2 F.3d 1304, 1314 n.15. (3d Cir.1993) (silence is a "tacit consent" to settlement). The lack of any objections or requests for exclusion strongly evinces the quality and value of the Settlement and supports final approval.

### 4. Class Counsel Strongly Endorse the Settlement

*In re Mexico Money Transfer Litig.,* 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). Here, based on an evaluation of the pleadings, filed motions and discovery, Class Counsel strongly recommends approval of the Settlement and stands ready to detail that recommendation at the final fairness hearing.

### 5. The Stage of the Proceedings and Discovery.

This factor is less concerned with the quantum of time or volume of discovery than it is with there being a sufficient basis upon which to evaluate the merits of the case and to contrast those merits against the proposed settlement.

As noted *supra*, the Parties exchanged enough information and documents in discovery (written and deposition) to weigh the strengths and weaknesses of their claims and defenses, and accurately determine the damages at issue which, in turn, allowed them to make an informed decision about settlement. The FDCPA is a strict liability statute and the conduct being questioned involved standardized collection letters. PPS provided all required class-related discovery—namely, class size and net worth information on a confidential basis. Thus, the stage of this case and the discovery undertaken was appropriate to allow for a determination that this Settlement is fair, reasonable and adequate.

## V. PLAINTIFF REQUESTS A REASONABLE INCENTIVE AWARD.

The Settlement, if approved, would provide for a payment of $2,000 to Plaintiff. The FDCPA differentiates between the recovery available to a named plaintiff and the recovery available to class members. Thus, Plaintiff may be awarded up to $1,000 in statutory damages. 15 U.S.C. § 1692k(a)(2)(B)(i).

"Incentive awards for class representatives are fairly common." *Chesemore v. All. Holdings, Inc.*, No. 09-CV-413-WMC, 2014 WL 4415919, at *4 (W.D. Wis. Sept. 5, 2014). "Incentive awards are justified when necessary to induce individuals to become named representatives." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 722 (7th Cir. 2001). Under the FDCPA's scheme, incentive awards are especially important because the Act provides no economic incentive for consumers to pursue class claims. Specifically, the Act only allows a plaintiff in a class action the same recovery as if s/he had merely pursued their own individual claim. *See*, 15 U.S.C. § 1692k(a)(2)(B)(i) referencing 15 U.S.C. § 1692k(a)(2)(A). Thus, an incentive award is justified.

The amount of the award can reflect the extent to which the class has benefitted from the plaintiff's efforts to protect the interests of the class and the amount of time and effort expended.

*Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). Here, Plaintiff requests a modest $1,000 which is justified based on the benefit she provided Class Members who, presumably, were unaware of their claims but who, unlike Plaintiff, has her name forever enshrined on a lawsuit.

## VI. PLAINTIFF IS ENTITLED TO RECOVER HER ATTORNEYS' FEES AND LITIGATION EXPENSES

Under the FDCPA, the prevailing plaintiff is entitled to "a reasonable attorney's fee as determined by the court."

> [A]ny debt collector who fails to comply with any provision of this title...is liable to such person … [for] damages, ... and in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court.

15 U.S.C. § 1692k(a)(3). "[T]he award of attorney's fees to plaintiffs for a debt collector's violation of 'any provision' of the FDCPA is mandatory." *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997). "[T]he methodology traditionally employed in determining appropriate fees under 42 U.S.C. § 1988 will serve as a useful guide" in FDCPA cases. *Id.* The Supreme Court has held that "the lodestar method yields a fee that is presumptively sufficient" under § 1988. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010); *see, Gastineau v. Wright,* 592 F.3d 747 (7th Cir. 2010).

Although PPS disputes liability, it has stipulated that, for purposes of Class Counsel's fee application, Plaintiff is deemed to have prevailed. [Doc. 22-1 at ¶12].

The Supreme Court has also encouraged a consensual resolution of attorney's fees as the ideal toward which litigants should strive. In *Hensley v. Eckerhart*, 461 U.S. 424 (1983), the United States Supreme Court wrote, "A request for attorney's fees should not result in a second major litigation. Ideally, of course, litigants will settle the amount of a fee." *Id.* at 437; *accord In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568-70 (7th Cir. 1992) (market factors, best known by the negotiating parties themselves, should determine the quantum of attorneys' fees). It is widely

recognized that fee agreements between plaintiffs and defendants are urged. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 720 (5th Cir. 1974) ("In cases of this kind, we encourage counsel on both sides to utilize their best efforts to understandingly, sympathetically, and professionally arrive at a settlement as to attorney's fees.").

Given the reliance of our legal system on private litigants to enforce substantive provisions of law through class actions, attorneys providing the essential enforcement services must be provided incentives comparable to those negotiated in the private bargaining that takes place in the legal marketplace, as it would otherwise be economical for defendants to practice injurious behavior. *See, Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326 (1980). It has therefore been urged (most persistently by Judge Posner of the Seventh Circuit) that in defining a "reasonable fee" in such representative actions, the law should "mimic the market." *See, e.g., Gaskill v. Gordon*, 160 F.3d 361, 363 (7th Cir. 1998).

Here, the Parties avoided the possibility of a "second major litigation" by negotiating an agreement with respect to Class Counsels' attorney's fees to be awarded, which only occurred *after* the Parties' had first resolved the other material terms of the Settlement. [Doc. 22-1, ¶12; *Thomasson Decl.*, ¶9]. Thus, the Court need not guess what are the "market factors" as the Parties, through able and experienced counsel have done so on their own through extensive and protracted negotiations.

Additionally, as recognized by the Seventh Circuit, "[i]n order to encourage able counsel to undertake FDCPA cases, as Congress intended, it is necessary that counsel be awarded fees commensurate with those which they could obtain by taking other types of cases. Paying counsel in FDCPA cases at rates lower than those they can obtain in the marketplace is inconsistent with the congressional desire to enforce the FDCPA through private actions, and therefore misapplies

the law." *Tolentino v. Friedman*, 46 F.3d 645, 652-653 (7th Cir. 1995). [*Thomasson Decl.*, ¶¶20-22].

Here, the lodestar method establishes the reasonableness of $48,000.00 and Class Counsels' hourly rates. As set forth in the Declaration of Class Counsel, the lodestar method yields actual fees in the amount of $41,862.50 plus costs in the amount of $10,715.38. *Id.* at ¶¶10-19. Notwithstanding Class Counsels' actual lodestar, the Parties' Settlement limits Class Counsels' attorneys' fees and costs to $48,000.00. *Id.* at ¶9; Doc. 22-1, ¶12.

## VII. CONCLUSION

For the foregoing reasons, Plaintiff respectfully request the Court grant her motion and enter a Final Approval Order including an award of Class Counsels' fees and costs.

Respectfully submitted this 20th day of February 2018.

> *s/ Andrew T. Thomasson*
> Philip D. Stern (NJ Bar # 045921984)
> Andrew T. Thomasson (NJ Bar # 048362011)
> STERN•THOMASSON LLP
> 150 Morris Avenue, 2nd Floor
> Springfield, NJ 07081-1315
> Telephone: (973) 379-7500
> Facsimile: (973) 532-2056
> E-Mail: philip@sternthomasson.com
> E-Mail: andrew@sternthomasson.com
>
> *Attorneys for Plaintiff, Kathy L. Safranski,*
> *and all others similarly situated*